The PEOPLE of the State of
Colorado, Petitioner,

v.

Peter McCREADIE, Respondent.

No. 96SC410.

Supreme Court of Colorado,
En Banc.

June 2, 1997.

11.   We reject Midway Ranches' assertion that this     appeal was frivolous.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Robert Mark Russel, First Assistant Attorney General, Sandra K. Mills, Assistant Attorney General, Roger G. Billotte, Assistant Attorney General, Criminal Enforcement Section, Denver, for Petitioner.

David F. Vela, Colorado State Public Defender, Douglas D. Barnes, Deputy State Public Defender, Denver, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to review the court of appeals opinion in *People v. McCreadie,* No. 94CA2187 (Colo.App. May 2, 1996) (not selected for official publication), in which the court of appeals held that on resentencing following a community corrections violation, the sentencing court must determine the amount of good time credit, if any, to which the defendant is entitled. We affirm the judgment of the court of appeals but clarify that the sentencing court should reflect the defendant's eligibility for time credits on the mittimus consistent with the information reported to the court by the community corrections facility. We further clarify that the defendant is not *entitled* to good time credit under the current statutory scheme.

I.

Respondent Peter McCreadie pled guilty to the crime of theft.[1] In September 1992, the sentencing court sentenced McCreadie to a ten year direct community corrections sentence at Peer I Community Corrections facility with 101 days of presentence confinement credit. On July 20, 1993, McCreadie tested positive for cocaine. Peer I terminated McCreadie from the program and he was returned to the custody of Pitkin County. On August 30, 1993, the sentencing court

resentenced McCreadie to ten years in the Department of Corrections (DOC). The court gave McCreadie 450 days credit for time served. The 450 days represented time served between September 14, 1992, when McCreadie was sentenced to Peer I, and August 30, 1993, the date of resentencing, plus the 101 days of presentence confinement credit noted on the original mittimus. The court did not, however, include any reference to good time credit on the mittimus.

McCreadie then filed a Crim.P. 35(c) motion alleging, *inter alia,* that the mittimus was incorrect because it did not reflect any good time credit. The sentencing court denied McCreadie's motion to modify the mittimus. On appeal, the court of appeals reversed the sentencing court's order and remanded the case with directions for the sentencing court to determine whether McCreadie was entitled to good time deductions and to modify the mittimus accordingly. We granted certiorari to clarify the responsibility of the sentencing court in determining and reporting good time eligibility.

II.

█ We begin by restating that an offender has no constitutional right to good time credit. *See Wolff v. McDonnell,* 418 U.S. 539, 557, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974); *Kodama v. Johnson,* 786 P.2d 417, 419 (Colo.1990). Rather, any claim to good time credit arises out of and is controlled by statute. *See Wolff,* 418 U.S. at 557, 94 S.Ct. at 2975.

█ Section 17–22.5–301, 8A C.R.S. (1986), is the general statute governing good time credit for offenders sentenced for crimes committed on or after July 1, 1979. It applies not only to offenders who are serving their sentence in the DOC but also to offenders confined in other institutions and facilities. *See People v. Chavez,* 659 P.2d 1381, 1383–84 (Colo.1983). The General Assembly has authorized the DOC to award good time credit to an offender who "has substantially

1. His offense was classified as a class 4 felony. § 18–4–401, 8B C.R.S. (1986 & 1996 Supp.).

The crime occurred on or about April 4, 1992.

observed all of the rules and regulations of the institution or facility in which he has been confined and has faithfully performed the duties assigned to him...." § 17–22.5–301(1), 8A C.R.S. (1986).[2] However, for offenders who are sentenced for crimes committed on or after July 1, 1985, the good time authorized "shall not vest and may be withheld or deducted...." § 17–22.5–301(3), 8A C.R.S. (1986).

Therefore, as a threshold matter, we note that while a defendant may become eligible for good time credit, he or she is not *entitled* to such credit. Under the provisions of section 17–22.5–303(3), the DOC may withdraw any good time credit. The statutes do not charge sentencing courts with discretion in determining good time credits, and therefore, sentencing orders may not override the statutory authority of the DOC in determining the good time credits ultimately applied to reduce the offender's sentence. *See Renneke v. Kautzky,* 782 P.2d 343, 345–46 (Colo. 1989) (holding that the General Assembly gave the DOC the authority to withhold or withdraw good time credit, and hence a sentencing court order regarding the offender's entitlement to good time credit could not be construed to override the DOC's authority).[3]

We therefore clarify that the sentencing court is not charged with determining the good time credit to which McCreadie was "entitled." This does not mean, however, that the sentencing court should completely disregard the issue of time credits. Instead, we recognize a distinct role for the sentencing court under the circumstances of this case as provided by the statutes governing community corrections programs.

### III.

Article 27 of title 17 of the Colorado Revised Statutes lays out the statutory framework for community corrections programs, including the criteria for accrual of time credits for offenders in those programs. The statute also addresses the procedures for resentencing an offender from community corrections into a DOC facility. Article 27 was revised and reenacted with significant changes and additions effective July 1, 1993. Although McCreadie was originally sentenced to the community corrections program in 1992, he was resentenced to the DOC in August of 1993. Thus, the statute was in effect at the time of McCreadie's resentencing and we conclude that its terms should govern our analysis here.[4]

Section 17–27–105(1)(j), 8A C.R.S. (1996 Supp.), states that if an offender in a community corrections program is resentenced to the DOC, the sentencing court shall make a finding of the amount of time credits for which the offender is eligible and include that finding on the mittimus. In relevant part, the section reads:

> Any offender sentenced to the department of corrections subsequent to placement in a community corrections program is entitled to credit against the term of confinement as described in section 17–27–104(9). The court shall make a finding of the amount of such time credits and include such finding in the mittimus that orders

---

2. Only when an offender successfully completes and is released from a community corrections sentence may the community corrections administrator determine good time without DOC involvement. *See* § 17–27–105(1)(i)(III), 8A C.R.S. (1996 Supp.).

3. To the extent that *People v. Chavez,* 659 P.2d 1381 (Colo.1983), inferred any entitlement to good time credit, we distinguish it on the basis that it concerned a prior version of section 17–22.5–301 that precluded the withdrawal of good time once vested. It also dealt with the original sentencing of an offender who had served presentence confinement time in the county jail.

4. We do not believe that applying the statute to McCreadie's resentencing works a retroactive impact. However, such application would be permissible even if it were to have retroactive implications because "application of a statute to a subsisting claim for relief does not violate the prohibition of retroactive legislation where the statute effects a change that is only procedural or remedial in nature." *Continental Title Co. v. District Court,* 645 P.2d 1310, 1314–15 (Colo. 1982). Absent clear legislative intent to the contrary, a statute affecting substantive rights and liabilities applies prospectively while a statute addressing procedural matters is assumed to apply retroactively. *See Rosa v. Industrial Claim Appeals Office,* 885 P.2d 331, 334 (Colo.App. 1994). *See also Smith v. Colorado Interstate Gas Co.,* 794 F.Supp. 1035, 1038 (D.Colo.1992). The sections of article 27 concerning resentencing to the DOC are procedural in nature.

the offender to be placed in the custody of the department of corrections.

§ 17–27–105(1)(j), 8A C.R.S. (1996 Supp.).

This section must be read in conjunction with section 17–27–104(9), which further explains several matters.[5] First, although the language of section 17–27–105(1)(j) employs the term "entitled," its meaning is qualified when read in the context of section 17–27–104(9) as directed. Section 17–27–104(9) states that the information on time credits is to be used for the purpose of calculating time credits pursuant to part 3 of article 22.5, which includes section 17–22.5–301. As we discussed above, this statute explains that there is no entitlement to good time credit since the DOC may withhold or withdraw it at any time. Thus, by reference to article 22.5, the DOC's authority to withhold or withdraw time credit is reenforced.

The meaning of the term "time credits" as referenced in section 17–27–105(1)(j) is also clarified. Section 17–27–104(9) refers to "the time credits granted to such offender pursuant to section 17–27–105(1)(i)." Section 17–27–105(1)(i) does not specifically mention either the terms "good time" or "earned time." Instead, it gives the community corrections program authority to award time credits both on the basis of compliance with rules and regulations of the facility, which is normally associated with "good time," see § 17–22.5–301, 8A C.R.S. (1986), and on the basis of completion of educational, employment and other requirements, which are normally associated with "earned time," see § 17–22.5–302,

8A C.R.S. (1986 & 1996 Supp.).[6] Since section 17–27–105(1)(i) discusses time credits that under the parallel statutory scheme are considered both good time and earned time,[7] we conclude that the reference is intended to include both types of time credits.[8]

Finally, section 17–27–104(9) directs the administrator of the community corrections program to provide a written summary of the residential days and other time credits to the referring agency at the time of resentencing. In a case such as this where the sentencing court imposed a direct sentence to community corrections, the sentencing court is the referring agency. Thus, it is the duty of the community corrections program to calculate the offender's eligibility for time credit and report this information to the sentencing court. Section 17–27–105(1)(j) in turn directs the sentencing court to include the information regarding time credits on the mittimus.

■ Thus, we view the statutory scheme for community corrections programs as directing in this case that: (1) the administrator of the community corrections program must provide a written summary concerning the offender's eligibility for time credits to the sentencing court prior to a resentencing following termination of placement; (2) the sentencing court must include the eligibility information on the mittimus or attach it thereto, and (3) the ultimate calculation and application of those credits is left to the discretion of the DOC.

§ 17–27–104(9), 8A C.R.S. (1996 Supp.).

5. Section 17–27–104(9) reads:
   The administrator of any community corrections program shall document the number of days of residential placement completed by each offender sentenced directly to the community corrections program by the court and the time credits granted to such offender pursuant to section 17–27–105(1)(i). If any such offender is rejected after acceptance by the community corrections board or the community corrections program, the program administrator shall provide a written summary of the residential days completed by such offender to the referring agency. If the offender is thereafter committed to the department of corrections, such summary shall be reported to the department of corrections to facilitate the calculation of any time credits pursuant to part 3 or part 4 of article 22.5 of this title.

6. *See also Bynum v. Kautzky,* 784 P.2d 735, 736 (Colo.1989) (explaining that "good time" rewards the inmate for substantially observing the rules and regulations of the facility and for performing assigned duties, while "earned time" is provided if the offender makes substantial progress in matters such as work and training).

7. Section 17–27–105(1)(i)(I)(C), in particular, discusses credits that are parallel to the definition of good time credits found in article 22.5.

8. We need not reach the question here of whether a distinction is made or should be made between good time and earned time in community corrections facilities.

## IV.

We therefore affirm the court of appeals with clarification that this case should be remanded to the sentencing court with directions to obtain a report from Peer I identifying any time credits for which McCreadie is eligible, and then to forward such report to the DOC.