**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 23-2492, 23-3016, 23-2992, 23-2508
_____

UNITED STATES OF AMERICA

v.

CAROLYN JACKSON
Appellant in 23-2492, 23-2992

&

JOHN E. JACKSON
Appellant in 23-3016, 23-2508
_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court Nos. 2:13-cr-00290-001, 2:13-cr-00290-002)
District Judge:  Honorable Susan D. Wigenton
_____

Submitted Under Third Circuit L.A.R. 34.1(a) on
December 10, 2024
_____

Before:  BIBAS, CHUNG, and ROTH, <u>Circuit Judges</u>

(Filed: March 21, 2025)

Rubin M. Sinins
Herbert I. Waldman
Javerbaum Wurgaft Hicks Kahn Wikstrom
505 Morris Avenue
Suite 200
Springfield, NJ 07081

      Counsel for Appellant Carolyn Jackson

Louise Arkel
Evan J. Austin
Carol Dominguez
David A. Holman
Office of Federal Public Defender
1002 Broad Street
Newark, NJ 07102

      Counsel for Appellant John E. Jackson

Mark E. Coyne
John F. Romano
Steven G. Sanders
Office of United States Attorney
970 Broad Street
Room 700
Newark, NJ 07102

      Counsel for Appellee

———————

OPINION OF THE COURT

———————

CHUNG, Circuit Judge.

Carolyn Jackson and her husband, John Jackson, were convicted of horrific child abuse after a thirty-nine-day jury trial. The original trial judge sentenced the Jacksons three times—twice after remand from this Court. On each appeal, we found the sentencing judge did not sentence the Jacksons in a manner supported by the jury's verdict and federal sentencing law. The Jacksons' sentences were vacated upon a third appeal and were remanded for resentencing with instructions that their cases be reassigned to a different judge. The Jacksons now bring this appeal, challenging the sentences imposed by the new judge. We will affirm.

I.    BACKGROUND

Because the facts have been reviewed at length in prior cases, we do not revisit them here.[1] Suffice it to say, this case concerns serious child abuse inflicted by the Jacksons on three

_____

[1]    For a full discussion of the facts, see United States v. Jackson, 862 F.3d 365, 368-370 (3d Cir. 2017). This was the first appeal, and we refer to it herein as "Jackson I." The second appeal was United States v. Jackson, 819 F. App'x 97, 99 (3d Cir. 2020) ("Jackson II"), and the third appeal was United States v. Jackson, 2023 WL 2755578 (3d Cir. Apr. 3, 2023) ("Jackson III").

adopted children, Joshua, "C," and "J," all below the age of four at the time of their abuse. The Jacksons were charged in a fifteen-count superseding indictment with conspiracy under N.J.S.A. § 2C:5-2 and several counts of endangering the welfare of a child under N.J.S.A. § 2C:24-4a.[2] At a jury trial overseen by Judge Katharine Hayden, John was found guilty of Counts 1, 3-9, and 11-12, and Carolyn was found guilty of Counts 1-12. Counts 2, 4, 7, 8, and 11, termed the "omission counts," charged the Jacksons' with withholding food, water, and/or medical care from the children. The other counts, known as the "commission counts," charged the Jacksons with forcing the children to ingest substances such as hot sauce and red pepper flakes, and physically assaulting them with various objects.

While <u>Jackson III</u> was pending, Carolyn Jackson completed serving her most recently imposed sentence.[3]

---

[2] Although these were state law violations, the Jackson were charged federally because these offenses occurred "on a military installation under the special jurisdiction of the federal government." <u>Jackson I</u> at 387. New Jersey law was accordingly "'assimilated' into federal law pursuant to the Assimilative Crimes Act ('ACA')." <u>Id.</u> at 368, 387.

[3] John Jackson does not explicitly concede that he had not finished serving his third sentence before it was vacated. In his opening brief, however, he indicates that he continued to serve his third sentence through the same date that the Third Circuit issued judgment in <u>Jackson III</u>. John Opening Br. at 65-66. Whether or not he completed his sentence does not affect the outcome of his appeal.

In Jackson III, we vacated the Jacksons' sentences and remanded for resentencing. The case was reassigned to Judge Susan Wigenton, who ordered that presentence reports (PSRs) be prepared for each Appellant.[4] After consideration of the entire trial record, the PSRs, the sentencing submissions, and the parties' presentations at a sentencing hearing, Judge Wigenton sentenced Carolyn Jackson to a term of imprisonment of 140 months and John Jackson to a term of imprisonment of 108 months.

The Jacksons timely appealed.

II.    JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742. We review findings of fact for clear error. United States v. Grier, 475 F.3d 556, 561 (3d Cir. 2007). We review questions of law, including whether the law of the case doctrine applies, de novo. Monasky v. Taglieri, 589 U.S. 68, 83 (2020) (questions of law); PDX N., Inc. v. Comm'r New Jersey Dep't of Lab. & Workforce Dev., 978 F.3d 871, 881 n.10 (3d Cir. 2020) (law of the case). We review the procedural and substantive reasonableness of a sentence for abuse of discretion. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009). However, when a party did not object to an alleged error at sentencing,

---

[4]    Judge Hayden had directed the U.S. Probation Office not to prepare offense level calculations for the Jacksons' second and third resentencings.

we review only for plain error.  <u>United States v. Flores-Mejia</u>, 759 F.3d 253, 255 (3d Cir. 2014).

III.    <u>DISCUSSION</u>

John and Carolyn Jackson raise the following issues on appeal.[5]  They argue that Judge Wigenton (1) violated their Fifth and Sixth Amendment rights when she found facts at sentencing by a preponderance of the evidence, (2) violated their Fifth and Sixth Amendment rights by resentencing them after they had finished serving their previously imposed sentences, (3) violated the law of the case doctrine, (4) imposed procedurally unreasonable sentences, and (5) imposed substantively unreasonable sentences.  We will affirm.

### A.    Findings of Fact at Sentencing

Facts pertinent to sentencing need only be submitted to a jury when such facts raise the applicable statutory maximum or mandatory minimum sentence.  <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 490 (2000) (statutory maximums); <u>Alleyne v. United States</u>, 570 U.S. 99, 103 (2013) (mandatory minimum sentences).  The Jacksons argue nonetheless that their Sixth Amendment rights to trial by jury and their Fifth Amendment rights to due process were violated when the District Court found, by a preponderance of the evidence, that the Jacksons'

---

[5]    Carolyn Jackson asserted all issues.  John Jackson joins the first two issues and appears to also join the third.  John Opening Br. at 3, 65-67.  John and Carolyn each bring their own procedural and substantive unreasonableness arguments.

6

offenses caused "serious bodily injury" or involved a "dangerous weapon." Carolyn[6] Opening Br. at 8. These factual findings supported the District Court's application of the aggravated assault Guideline and resulted in higher Guidelines range terms of imprisonment. The Jacksons argue that the District Court's application of the aggravated assault Guideline makes them liable for committing aggravated assault, a crime for which the jury did not convict them. They also argue that the "'statutory maximum' for <u>Apprendi</u> purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Carolyn Opening Br. at 14-15 (quoting <u>Blakely v. Washington</u>, 542 U.S. 296, 303 (2004) (emphasis omitted)). Therefore, they contend, the Sixth Amendment and the Due Process Clause require these facts to have been found by a jury rather than the sentencing judge. <u>Id.</u> at 11 (quoting <u>Apprendi</u>, 530 U.S. at 496).

We have repeatedly rejected these arguments and held that judicial findings of fact that increase the defendant's Guidelines range, but not the statutory maximum, do not violate the Constitution. <u>See</u>, <u>e.g.</u>, <u>United States v. Gonzalez</u>, 905 F.3d 165, 205-06 (3d Cir. 2018); <u>United States v. Fisher</u>, 502 F.3d 293, 305, 306 (3d Cir. 2007). Here, the District Court sentenced both Jacksons to terms of imprisonment within the statutory maximum term of imprisonment of ten years and the

---

[6]     To avoid confusion, we will sometimes refer to Carolyn and John Jackson by their first names.

7

Court's factual findings did not increase that range.[7] Consistent with our precedent, we conclude that the District Court did not violate the Jacksons' Fifth and Sixth Amendment rights by relying upon its own factfinding in applying the aggravated assault Guideline.

## B. Finality of Sentence

### 1. Fifth Amendment Right Against Double Jeopardy

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. In the sentencing context, the double jeopardy right attaches when a defendant has "a reasonable expectation of finality" in his sentence. See Wilmer v. Johnson, 30 F.3d 451, 458 (3d Cir. 1994). A defendant whose sentence is under appeal "has no expectation of finality in his sentence until the appeal is concluded or the time for appeal has expired." Id. at 457 (quoting United States v. DiFrancesco, 449 U.S. 117, 136 (1980)); United States v. McMillen, 917 F.2d 773, 777 n.5 (3d Cir. 1990) ("DiFrancesco teaches that the defendant can have no expectation of finality of sentence until the government's statutory period for appeal has expired."). Therefore, no Double Jeopardy concern is implicated when a defendant is

---

[7] For instance, Carolyn received a total sentence of 140 months, comprised of 120 months at Count One followed by 20 months on Counts Two through Twelve. Each crime of conviction carried a maximum term of imprisonment of ten years. Jackson I at 389; N.J.S.A. 2C:43-6a(2). None of Judge Wigenton's findings of fact raised those statutory maximums.

8

resentenced after his sentence was vacated on appeal. DiFrancesco, 449 U.S. at 136; see also Bozza v. United States, 330 U.S. 160, 167 (1947) (lawful resentencing after vacatur "did not twice put petitioner in [double] jeopardy" because "[t]he sentence as corrected, imposes a valid punishment for an offense instead of an invalid punishment for that offense"); United States v. Busic, 639 F.2d 940, 948 (3d Cir. 1981) (dictum) ("Nothing in the history or policy of the [Double Jeopardy Clause] suggests that its purposes included protecting the finality of a sentence and thereby barring resentencing to correct a sentence entered illegally or erroneously."); United States v. Guevremont, 829 F.2d 423, 427 (3d Cir. 1987).

The Jacksons argue, though, that once a defendant completes the sentence originally imposed, though under appeal, he has a legitimate expectation of finality.[8] Like the District Court, we recognize that this is a matter of first impression. See United States v. Jackson, 2023 WL 5994640, at *5 n.6 (D.N.J. Sept. 15, 2023). The Supreme Court's seminal decision in DiFrancesco "did not address the application of double jeopardy principles to a defendant whose sentence has been fully served." See United States v. Arrellanos-Rios, 799 F.2d 520, 523 (9th Cir. 1986) (citing 449 U.S. 117 (1980)). Our Court's decision in United States v. McMillen also expressly left open the possibility that "a defendant who has completely satisfied his sentence may have a reasonable expectation of finality as to the completed sentence." 917 F.2d 773, 777 n.5 (3d Cir. 1990) (citing United

---

[8]     As noted above, John Jackson's continued to serve his sentence through the day Jackson III was issued. Whether or not he completed his sentence while his appeal was pending is irrelevant to the outcome of this appeal.

9

States v. Rico, 902 F.2d 1065, 1068–69 (2d Cir. 1990)). Today's decision forecloses it.

To support their argument, the Jacksons cite cases that they either misconstrue or that are readily distinguishable from their situation. For instance, some cited cases confirm that a district court judge can impose a new sentence without violating the Double Jeopardy Clause.[9] Other cited cases are inapposite because they explain that a defendant's completed sentence on two counts cannot be adjusted after conviction on a third count was reversed[10] or that a prior sentence cannot be amended *after* the time for appeal has passed[11] or where the government never appealed the sentence.[12] And many of these

---

[9] See Busic, 639 F.2d at 947-48 ("There is nothing in the history or the policies of the Double Jeopardy Clause that justifies the denial of resentencing when the sentence has been spread erroneously over counts that have been declared invalid."); United States v. Silvers, 90 F.3d 95, 99 (4th Cir. 1996) (finding that resentencing on reinstated conviction did not violate Double Jeopardy because the defendant was simply placed in the position he would have been in had there been no error).

[10] United States v. Arrellano-Rios, 799 F.2d 520, 524 (9th Cir. 1986).

[11] United States v. Daddino, 5 F.3d 262, 265 (7th Cir. 1993).

[12] Smith v. State, 334 So. 3d 377, 378, 379 n.4 (Fla. Dist. Ct. App. 2022); State v. Houston, 2010 Iowa App. LEXIS

cases state that a legitimate expectation of finality requires that the time for appeal has passed, or the appeal is completed,[13] even when the defendant has served his sentence.[14]

---

1546, \*5 (Iowa Ct. App. Dec. 8, 2010) (comparing the facts before it to a case where "the State sought review of the defendant's discharges from probation by timely writs of certiorari to the supreme court" and noting that "[h]ere, the State never timely challenged the order discharging [the defendant] from probation").

[13]     United States v. Rico, 902 F.2d 1065, 1068 (2d Cir. 1990) ("So long as a sentence can be increased on appeal, defendant has no expectation of its finality" (citing DiFrancesco, 449 U.S. at 134-136, 139)); McMillen, 917 F.2d at 777 ("McMillen 'is charged with knowledge of the statute and its appeal provisions, and has no expectation of finality in his sentence until the appeal is concluded or the time to appeal has expired'" (quoting DiFrancesco, 449 U.S. at 136)).

[14]     State v. Lehman, 308 Kan. 1089, 1097 (2018) ("[T]he view that the district court cannot correct an illegal sentence after the sentence expires and the direct appeal has been completed (or the time to appeal has lapsed) is more in keeping with the purpose of double jeopardy protection, allowing a person to move on with his or her life after having paid the debt to society without wondering whether the government will come back to extract further punishment."); People v. Williams, 14 N.Y.3d 198, 217 (2010) ("Even where a defendant's sentence is illegal, there is a legitimate expectation of finality once the initial sentence has been served and the direct appeal has been completed (or the time to appeal has

Despite the vast number of cases the Jacksons cite, all support the proposition that a defendant has no legitimate expectation of finality in their sentence while that sentence is under appeal.[15] We decline to break from this precedent. To do otherwise would allow the Jacksons to avoid legal sentences

---

expired)."); State v. Schubert, 212 N.J. 295, 312 (2012) (same); Lanier v. State, 270 So. 3d 304, 310 (Ala. Crim. App. 2018) ("[W]e hold that a trial court loses jurisdiction to correct an illegal sentence once that sentence expires and the direct appeal has been completed or the time to appeal has lapsed and that a trial court's correcting an illegal sentence after the expiration of that sentence violates principles of double jeopardy."); People v. Velez, 19 N.Y.3d 642, 649 (2012) ("[W]e [have] held that, where a sentence is no longer subject to appeal, the Double Jeopardy Clause of the Federal Constitution forbids a resentencing … after the original sentence is completed." (quoting Williams, 14 N.Y.3d at 217 (2010)).

[15] See, e.g., United States v. Radmall, 340 F.3d 798, 801 (9th Cir. 2003) (when defendant's sentence for multiple counts reflects "his overall offense conduct rather than separate and independent sentences on each count," the defendant cannot have an expectation of finality on one part of his sentence when another part of the sentence is appealed); United States v. Foumai, 910 F.2d 617, 621 (9th Cir. 1990) (defendant had "a legitimate expectation of finality in his reversed conviction" because time for appeal had passed); Jones v. Thomas, 491 U.S. 376, 387 (1989) (concluding after appeal, that "[t]he Missouri court's alteration of respondent's sentence to a single term for felony murder with credit for time served provided suitable protection of his double jeopardy rights.").

and "provide [them an] unjustified windfall[,]" simply because they received such erroneously short sentences. Jones, 491 U.S. at 387 ("[N]either the Double Jeopardy Clause nor any other constitutional provision exists to provide unjustified windfalls."). Because the Jacksons' sentences were under appeal, they had no reasonable expectation of finality in their sentences, completed or not, and their double jeopardy rights did not attach.

### 2. Fifth Amendment Right to Due Process

The Jacksons also argue that, even if their resentencings did not violate double jeopardy, their general Fifth Amendment due process rights were violated because they had a legitimate expectation of finality upon completion of their sentences while Jackson III was pending. Quoting from United States v. Davis, they argue that "[a] defendant's due process rights may be violated 'when a sentence is enhanced after the defendant has served so much of his sentence that his expectations as to its finality have crystallized.'" 112 F.3d 118, 123 (3d Cir. 1997) (quoting United States v. Lundien, 769 F.2d 981, 987 (4th Cir. 1985)). But Davis clarified that "[a] defendant … does not automatically acquire a vested interest in a shorter, but incorrect sentence." Id. (citing DeWitt v. Ventetoulo, 6 F.3d 32, 35 (1st Cir. 1993), cert. denied, 511 U.S. 1032 (1994)). Davis also does not apply here because it addresses a defendant's legitimate expectation of finality in a sentence when a *habeas* proceeding is pending, Davis, 112 F.3d at 123, and had no impact on DiFrancesco's holding that a defendant has no reasonable expectation of finality in his sentence until the time for appeal has passed or the appeal is completed.

The Jacksons assert two other reasons their resentencings were fundamentally unfair and violated due

13

process. First, they rely upon cases that are easily distinguished and do not support concluding a due process violation occurred here.[16] Second, the Jacksons argue that the fragmented manner in which they have been sentenced means that due process would be violated if they were resentenced. We have now made clear, however, that there is no reasonable expectation of finality while an appeal is pending. We decline to impose a different rule when serial appeals are involved. While the fragmented nature of the proceedings here may be undesirable, it does not violate due process and certainly does not weigh in favor of rewarding the Jacksons the windfall of serving sentences that this Court has found to be erroneous.

### C.    Law of the Case

The law of the case is a prudential rule that "holds that a rule of law announced in a case should later be applied to the same issues in subsequent stages in the litigation. Law of the case may counsel against, but does not prevent, a district court from reconsidering its prior rulings." Saint-Jean v. Palisades Interstate Park Comm'n, 49 F.4th 830, 836 (3d Cir. 2022) (internal quotations and citations omitted). Carolyn Jackson

---

[16]    See United States v. Ray, 578 F.3d 184, 199, 202 (2d Cir. 2009) (concluding that a fifteen-year delay between remand and sentencing violated due process); DeWitt v. Ventetoulo, 6 F.3d 32, 34 (1st Cir. 1993) (holding that reinstatement of a defendant's life sentence violated due process where the state had reopened a "final unappealed decision").

14

argues that three of Judge Wigenton's sentencing decisions[17] impermissibly contradicted Judge Hayden's earlier, law-of-the-case decisions.

The law of the case doctrine does not apply here. We vacated the October 15, 2021, sentencing order of Judge Hayden and remanded for sentencing. Jackson III, at *3, 5. When a sentence is vacated, the defendant is rendered unsentenced. United States v. Mitchell, 38 F.4th 382, 388 (3d Cir. 2022). Judge Wigenton thus had a clean slate on which there was no law of the case for sentencing. See Pepper v. United States, 562 U.S. 476, 507-08 (2011). This applies equally to the dangerous weapons enhancement, even in light of this Court's Jackson II ruling that Judge Hayden had not clearly erred when finding that various objects used by the Jacksons were not "'dangerous weapons[.]'" Jackson II at 101 n.10. That ruling neither concluded that Judge Hayden's finding was affirmatively correct, nor bound the resentencing court to find the same.

### D.     Procedural and Substantive Unreasonableness

District courts follow a three-step process to sentence a defendant. United States v. Wright, 642 F.3d 148, 152 (3d Cir. 2011). "At step one, the court calculates the applicable Guidelines range which includes the application of any sentencing enhancements. At step two, the court considers any

---

[17]     These are: Judge Wigenton's decision to calculate the Jacksons' sentence using eleven groupings, to use the assault and aggravated assault Guideline for the omission counts, and to apply the dangerous weapon sentencing enhancement.

motions for departure and, if granted, states how the departure affects the Guidelines calculation. At step three, the court considers the recommended Guidelines range together with the statutory factors listed in 18 U.S.C. § 3553(a) and determines the appropriate sentence, which may vary upward or downward from the range suggested by the Guidelines." Id. (internal citations omitted). The Jacksons argue that their sentences were procedurally and substantively unreasonable. As noted above, we review the procedural and substantive reasonableness of a sentence under an abuse of discretion standard. Tomko, 562 F.3d at 567. When a party appeals an error to which they did not object at sentencing, we review only for plain error. Flores-Mejia, 759 F.3d at 255.

### 1. Carolyn Jackson's Procedural Unreasonableness Arguments

"When a defendant alleges procedural error, we must ensure that the district court did not fail to calculate (or miscalculate) the Guidelines range; treat the Guidelines as mandatory; gloss over the Section 3553(a) factors; choose a sentence based on a clearly erroneous fact; or inadequately explain the chosen sentence." United States v. Jumper, 74 F.4th 107, 114 (3d Cir. 2023) (internal quotation marks omitted).

Carolyn did not object to the alleged errors at sentencing, so we review only for plain error. Flores-Mejia, 759 F.3d at 255.[18] Carolyn urges us to find that the sentencing

---

[18] Although Carolyn characterizes this as a substantive unreasonableness argument, it is better analyzed for procedural unreasonableness because she challenges the judge's factual findings as erroneous.

16

judge abused her discretion by relying on inaccurate information, preventing the judge from giving "rational and meaningful consideration" to the Section 3553(a) factors. Grier, 475 F.3d at 571. Specifically, she argues that the sentencing court failed to recognize that: Carolyn expressed remorse; used corporal punishment to punish all of her children, not just her adopted children; and "C" and Joshua had injuries the defendants did not cause. She further argues that the sentencing court erroneously blamed Carolyn for Joshua's death, called the corporal punishment torture, and did not consider Carolyn's positive post-sentence conduct. Carolyn Opening Br. at 50-58. We cannot conclude that the District Court plainly erred.

First, Judge Wigenton did recognize Carolyn's expression of remorse and found a marginal acceptance of responsibility. She was not required to agree with Judge Hayden's finding that Carolyn Jackson fully accepted responsibility. Similarly, Judge Wigenton recognized that Carolyn abused all of her children, and accurately noted that she abused her adopted children more severely. Furthermore, Judge Wigenton stated she did not impose the sentence as means to punish the Jacksons for Joshua's death, did not depart upward based on her view that the children suffered torture, and explained why she found the children's various injuries were caused by the defendant's abuse.[19] Finally, there is no

---

[19] This is consistent with Jackson I in which we stated, "It defies common sense to believe that the jury found that Defendants physically assaulted their adopted children, withheld sufficient nourishment and water from them, and forced them to ingest hot sauce, red pepper flakes, and raw

basis to conclude that, when Judge Wigenton stated that she hopes Carolyn will do things differently, she did not consider Carolyn's post-sentence conduct. Those statements were made in the context of analyzing the Section 3553(a) factors (e.g., the nature of the offense and the need for the sentence imposed to reflect the seriousness of the offense) and recognizing the lifelong harm inflicted upon the children. We perceive no plain error.

### 2. John Jackson's Procedural Unreasonableness Argument

John Jackson argues that Judge Wigenton's application of the assault Guideline to the omission counts was procedural error.[20] We need not decide whether the District Court erred because to the extent there was any error, such error was harmless in light of the District Court's imposition of a valid alternative sentence.

Procedural errors at sentencing, which include

_____

onion—but that such conduct did not cause the marks and bruises, the malnourishment, the hypernatremia, and the children's other injuries and medical issues." Jackson I at 397.

[20] Because no Guideline has been expressly promulgated for the state offenses of conviction, the sentencing court applies the "most analogous" offense Guideline pursuant to U.S.S.G. § 2X5.1. Jackson I at 371. In Jackson I, we held that the elements-based test applies to determine which Guideline, if any, is most analogous to the convicted offense. Id. at 376. John argues that the District Court failed to apply an elements-based test when determining that the assault Guideline applied to the omission counts.

18

miscalculations of the Guidelines, are subject to harmless error review. United States v. Raia, 993 F.3d 185, 195 (3d Cir. 2021). "In the context of a Guidelines calculation error, harmless error means that the record must demonstrate that there is a high probability that the sentencing judge would have imposed the same sentence under a correct Guidelines range, that is, that the sentencing Guidelines range did not affect the sentence actually imposed." Id. (internal quotations omitted). The sentencing judge can demonstrate the requisite high probability by "explicitly stat[ing] that [she] would have imposed the same sentence even under the correct Guidelines range." Id. "However, even an explicit statement that the same sentence would be imposed under a different Guidelines range is insufficient if that alternative sentence is not also a product of the entire three-step sentencing process." Id. at 196.

John Jackson argues that any error was not harmless because the District Court only made a general statement that it would impose the same sentence without "reveal[ing] any consideration of the omission counts as untethered to the guidelines." John Opening Br. at 43-44. He argues, essentially, that if the District Court had declined to apply the assault Guidelines to the omission counts, it would have found that there was no applicable Guidelines section[21] and that the appropriate sentence for these counts would have been determined solely by the Section 3553(a) factors. Thus, the

---

[21] As noted above, because no Guideline has been expressly promulgated for the state offenses of conviction, the sentencing court applies the "most analogous" offense Guideline. If none are sufficiently analogous, the sentencing court relies upon the Section 3553(a) factors in imposing a sentence.

argument goes, although Judge Wigenton addressed the Section 3553(a) factors, the alleged error is not harmless because she did not explicitly state that this analysis applied in the absence of a Guidelines range.

We disagree. We conclude that the District Court issued a valid alternative sentence that was a product of the three-step sentencing process. Raia, 993 F.3d at 196. The District Court explained she would accept the arguments of defense counsel, that is, a Guidelines range of seventy-to-eighty-seven months predicated on the conclusion that there was no Guidelines section applicable to the omission counts. She then explained that she would vary upwards to reach the sentence of 108 months based upon the facts, the history, and the circumstances of the charged offenses. Those facts and that history were already greatly detailed in her consideration of the Section 3553(a) factors. Having explicitly referenced them, the District Court need not have restated her analysis. In sum, the District Court's process satisfies us "that there is a high probability that [Judge Wigenton] would have imposed the same sentence under a correct Guidelines range." Raia, 993 F.3d at 195 (internal quotations omitted). Any procedural error is therefore harmless.

### 3. Substantive Unreasonableness Arguments

Carolyn and John Jackson also argue that their sentences are substantively unreasonable. "[D]efendants bear a heavy burden to show that a sentence within the applicable Guidelines range was substantively unreasonable." United States v. Seibert, 971 F.3d 396, 402 (3d Cir. 2020) (cleaned up). If a sentence is procedurally sound, we assume that it is reasonable and "affirm unless we believe that no reasonable

court would have imposed that sentence for the reasons provided." Jumper, 74 F.4th at 114 (internal quotations omitted). "As long as a sentence falls within the broad range of possible sentences that can be considered reasonable in light of the § 3553(a) factors, we must affirm." United States v. Wise, 515 F.3d 207, 218 (3d Cir. 2008).

John Jackson argues that his sentence is substantively unreasonable because Judge Wigenton did not adequately consider John's history of abuse and military service as a mitigating factor. However, "a district court's failure to give mitigating factors the weight a defendant contends they deserve does not make a sentence substantively unreasonable." Seibert, 971 F.3d at 402 (internal quotations omitted).

Carolyn and John Jackson's sentences are substantively reasonable. "[T]he record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." Id. at 399-400. We cannot conclude that no reasonable court would have imposed the sentences in light of the egregious conduct here.

IV.    CONCLUSION

For the reasons presented above, we will affirm.