The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 14, 2025

**2025COA72**

**No. 23CA1376, People v. Chronis — Criminal Law — Sex Offender Registration — Petition for Removal from Registry — Lifetime Mandatory Registration — Adjudications as a Juvenile; Constitutional Law — Eighth Amendment — Cruel and Unusual Punishments — Ex Post Facto Clause**

As matters of first impression, a division of the Colorado Court of Appeals holds that lifetime registration under the Colorado Sex Offender Registration Act's section 16-22-113(3), C.R.S. 2024, because of a juvenile adjudication and an adult conviction does not implicate the Ex Post Facto Clause and does not constitute an unconstitutional punishment under the Eighth Amendment.

The division also holds that a district court may consider an expunged juvenile adjudication when determining whether to grant a petition for deregistration as a sex offender under section 16-22-113(3)(c), provided the applicable expungement statute permits the court to review the expunged adjudication.

Court of Appeals No. 23CA1376
Jefferson County District Court No. 09CR2302
Honorable Meegan A. Miloud, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

David Patrick Chronis,

Defendant-Appellant.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE FOX
Harris and Schutz, JJ., concur

Announced August 14, 2025

Philip J. Weiser, Attorney General, Claire V. Collins, Assistant Attorney General, Leo T. Nguyen, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Springer and Steinberg, P.C., Harvey A. Steinberg, Taylor Ivy, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, David Patrick Chronis, appeals the district court's denial of his petition to discontinue sex offender registration. He has an expunged juvenile adjudication for a charge with an underlying factual basis involving unlawful sexual behavior and an adult conviction for a sex offense. We reverse the district court's order and remand for the court to hold a hearing to determine if good cause exists to inspect Chronis' expunged juvenile adjudication record.

## I.    Background

¶ 2    In 2009, Chronis engaged in sexually explicit conversations online and over the phone with an undercover investigator posing as an underage teenage girl. After Chronis arranged a meeting with the undercover officer, he was arrested. Chronis was charged with (1) internet luring of a child; (2) internet sexual exploitation of a child; and (3) criminal attempt to commit sexual assault on a child. Chronis ultimately pleaded guilty to criminal attempt (internet luring of a child), a class 5 felony; in exchange, the other charges were dismissed. On June 1, 2010, the district court sentenced Chronis to two years of probation, requiring him to register as a sex

offender. Chronis' probation officer later recommended terminating his probation, and the court did so on May 24, 2012.

¶ 3    On July 21, 2022, Chronis petitioned to discontinue his sex offender registration, certifying that section 16-22-113(3), C.R.S. 2024 — which mandates lifetime registration for some offenders — did not make him ineligible for deregistration. He also certified that it had been ten years since his conviction, and he had not been convicted of any subsequent crime involving unlawful sexual behavior. *See* § 16-22-113(1)(b).

¶ 4    A probation supervisor, responding to an inquiry from the court, initially supported Chronis' petition. But the probation supervisor soon amended that support, informing the court that Chronis did not qualify for deregistration because of a 1991 juvenile adjudication in Denver Juvenile Court Case No. 91JD1752.

¶ 5    The district court held a hearing on November 1, 2022, noting that it did not have much information concerning the basis for the 1991 adjudication and that the case had been expunged. But the court also noted that, regardless of the adjudication's expungement, Chronis was ineligible for deregistration under section 16-22-113(3)(c) if the adjudication involved unlawful sexual

2

behavior. The prosecution represented that it would investigate the basis for the 1991 adjudication, so the court continued the matter. The prosecution responded later that day and requested that Chronis' petition be denied because, in the 1991 adjudication, Chronis pleaded guilty to "sexual assault in the third degree," a class 1 misdemeanor, rendering him ineligible for deregistration. The record does not show that the court ruled on the matter.

¶ 6     In July 2023, Chronis again petitioned for deregistration on the same grounds and requested a hearing. Chronis argued that expunged adjudications do not preclude deregistration under section 16-22-113(3)(c), and because his record in the 1991 case was expunged in 1995, he could deregister. The prosecution again opposed the petition, arguing that an expunged adjudication for an offense based on unlawful sexual behavior prohibited deregistration.

¶ 7     The court denied Chronis' petition without a hearing, and this appeal followed.

## II.     Issues on Appeal

¶ 8     Chronis contends that the plain language of section 16-22-113(3)(c), considered in the context of the Colorado Sex Offender

3

Registration Act (CSORA), §§ 16-22-101 to -115, C.R.S. 2024, does not prohibit deregistration based on expunged adjudications. Chronis argues that expungement erases an adjudication, and therefore it cannot provide a legal basis to deny deregistration where the petitioner "*has* a conviction as an adult and one or more adjudications as a juvenile for unlawful sexual behavior." § 16-22-113(3)(c) (emphasis added).

¶ 9     Further, Chronis highlights that section 16-22-113(3)(c) refers to adjudications "for unlawful sexual behavior or for any other offense, the underlying factual basis of which is unlawful sexual behavior *pursuant to section 16-22-103(2),*" C.R.S. 2024. (Emphasis added.) And, Chronis notes, section 16-22-103(2)(a) specifies that registration is required for convictions "[o]n and after July 1, 1994," for unlawful sexual behavior, and that section 16-22-103(2)(c)(I) adds new criteria for those convicted "on or after July 1, 2002." His expunged 1991 plea, he says, does not satisfy the statute.

¶ 10    Chronis contends that section 16-22-113(3)(c) only prohibits deregistration when a petitioner has prior offenses resulting in convictions "[o]n or after July 1, 1994," or adjudications "on or after July 1, 2002," requiring registration. Chronis adds that construing

4

the statutes to require lifetime registration based on an old and expunged juvenile adjudication would create an unconstitutional ex post facto punishment.

¶ 11 Finally, Chronis argues that, if the plain language of the statutes does not resolve the issue, then we should apply the rule of lenity to bar the use of expunged juvenile adjudications in deregistration decisions.

## III. Analysis

### A. Standard of Review and Statutory Interpretation

¶ 12 "We review issues of statutory interpretation de novo." *McCoy v. People*, 2019 CO 44, ¶ 37. "We review a district court's denial of a petition to discontinue sex offender registration for an abuse of discretion. 'A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law.'" *Moore v. 4th Jud. Dist. Att'y*, 2024 COA 48, ¶ 6 (citations omitted).

¶ 13 "When a court interprets a statute, its goal is to give effect to the intent of the legislature." *People v. Patton*, 2016 COA 187, ¶ 9. "To do so, we look first to the language of the statute, giving its words and phrases their plain and ordinary meanings. We read

statutory words and phrases in context, and we construe them according to the rules of grammar and common usage." *McCoy*, ¶ 37 (citation omitted). We also "must avoid 'constructions that would render any words or phrases superfluous or lead to illogical or absurd results.'" *Patton*, ¶ 9 (quoting *Doubleday v. People*, 2016 CO 3, ¶ 20). Instead, we must effectuate the legislative scheme "as a whole, giving consistent, harmonious, and sensible effect to all of its parts." *McCoy*, ¶ 38. "Absent clear legislative intent to the contrary, a statute affecting substantive rights and liabilities applies prospectively while a statute addressing procedural matters is assumed to apply retroactively." *People v. McCreadie*, 938 P.2d 528, 530 n.4 (Colo. 1997).

## B.     CSORA and Deregistration

¶ 14      An individual, like Chronis, with a class 5 felony conviction involving unlawful sexual behavior may petition for deregistration ten years after "final release from the jurisdiction of the court," provided that they have not "subsequently been convicted of unlawful sexual behavior or of any other offense, the underlying factual basis of which involved unlawful sexual behavior." § 16-22-113(1)(b).

6

¶ 15     Some individuals, however, may never deregister as sex offenders. § 16-22-113(3). As relevant here, "[a]ny adult who . . . has a conviction as an adult and one or more adjudications as a juvenile for unlawful sexual behavior or for any other offense, the underlying factual basis of which is unlawful sexual behavior pursuant to section 16-22-103(2)," is never eligible for deregistration. § 16-22-113(3)(c); *see also People in Interest of T.B.*, 2021 CO 59, ¶ 14.

¶ 16     CSORA defines a "conviction" for purposes of determining whether an individual has two or more convictions that may prevent them from deregistering as "having received a verdict of guilty by a judge or jury, having pleaded guilty or nolo contendere, having received a disposition as a juvenile, having been adjudicated a juvenile delinquent, or having received a deferred judgment and sentence or a deferred adjudication." § 16-22-102(3), C.R.S. 2024. Adjudication is defined as "a determination by the court that it has been proven beyond a reasonable doubt to the trier of fact that a juvenile has committed a delinquent act or that a juvenile has pled guilty to committing a delinquent act." § 16-22-102(1). The statute adds that, "when a previous conviction must be pled and proven as

an element of an offense or for purposes of sentence enhancement, 'adjudication' means conviction." *Id.*

¶ 17 In *McCulley v. People*, 2020 CO 40, ¶¶ 28-30, 34, the supreme court held that a successfully completed deferred judgment does not fall under the definition of a "conviction" for purposes of section 16-22-113(3)(c). The court reasoned that the present tense use of "*has* more than one conviction," *id.* at ¶ 29 (quoting § 16-22-113(3)(c)), did not apply to completed deferred adjudications because, once completed, they are no longer convictions — the individual merely *had* a conviction. *Id.* at ¶ 30.

¶ 18 In *Moore*, a division of this court considered section 16-22-113(3)(c)'s cross-reference to section 16-22-103(2), which provides, in part, that "[o]n and after July 1, 1994, any person who is convicted in the state of Colorado of unlawful sexual behavior or of another offense . . . which involves unlawful sexual behavior" must register as a sex offender. *See Moore*, ¶¶ 11-18. The division held that the reference to the July 1, 1994, cutoff did not mean that only offenses committed on or after July 1, 1994, satisfy section 16-22-113(3)(c)'s multiple convictions requirements. *Id.* at ¶¶ 12-14. The division reasoned that the reference to July 1, 1994, "applies to the

affirmative obligation to register, which is a different question from eligibility to petition for deregistration." *Id.* at ¶ 13. Instead, the timeframe limitation only applies to convictions for "any other offense, the underlying factual basis of which is unlawful sexual behavior pursuant to section 16-22-103(2)," § 16-22-113(3)(c), and not to convictions solely for "unlawful sexual behavior." *Moore,* ¶¶ 12, 15. In other words, a person convicted of a qualifying offense in 1991 would not be required *to register* until 1994, but the 1991 conviction still counts toward the person's ineligibility to deregister.

¶ 19 For the same reasons given by the division in *Moore*, we reject Chronis' argument that his 1991 adjudication may not be used to deny his petition for deregistration based on the cross-reference to the timeframes in section 16-22-103(2). The timeframe in section 16-22-103(2)(a) refers to the offenses triggering the obligation to register as a sex offender. It does not mean that all convictions or adjudications referenced in section 16-22-113(3)(c) must have occurred on or after the cutoff of July 1, 1994. *See Moore,* ¶ 13. The same reasoning applies to the "July 1, 2002," conviction and adjudication timeframe mentioned in section 16-22-103(2)(c)(I). *See*

*also* § 16-22-103(2)(c)(V) (connecting adjudications to the provisions in section 16-22-103(2)(c)(I)).  And like in *Moore*, Chronis' adjudication for third degree sexual assault directly involved unlawful sexual behavior.  *See Moore*, ¶ 15.

### C.    The Ex Post Facto Clause and Eighth Amendment

¶ 20    First, we conclude that requiring Chronis to register as a sex offender for life would not implicate the Ex Post Facto Clause or the Eighth Amendment because he is not prohibited from deregistering solely because of his juvenile adjudication.

¶ 21    "The ex post facto clauses of the United States and Colorado constitutions, U.S. Const. art. I, § 9, cl. 3; Colo. Const. art. II, § 11, address the injustice that arises when government action alters the legal consequences of an event or act after the fact."  *Woldt v. People*, 64 P.3d 256, 270 (Colo. 2003).  In turn, the Eighth Amendment to the U.S. Constitution and Article II, section 20 of the Colorado Constitution, provide that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted," and prohibit sentences grossly disproportionate to the crime.  *Wells-Yates v. People*, 2019 CO 90M, ¶¶ 5, 9 (alteration in original) (quoting U.S. Const. amend. VIII).

¶ 22    In *Smith v. Doe*, the United States Supreme Court held that Alaska's sex offender registry scheme was "nonpunitive, and its retroactive application did not violate the *Ex Post Facto* Clause." 538 U.S. 84, 105-06 (2003).  And the Colorado Supreme Court noted in *T.B.* that divisions of the "court of appeals have consistently followed *Smith*'s reasoning to hold that registration pursuant to CSORA does not constitute punishment for purposes of the Ex Post Facto Clause or the Eighth Amendment."  *T.B.,* ¶ 35. But the Colorado Supreme Court also held that "mandatory lifetime sex offender registration for offenders with multiple juvenile adjudications constitutes punishment for purposes of the Eighth Amendment" and constitutes prohibited cruel and unusual punishment if the registration system does not "provid[e] a mechanism for individualized assessments or an opportunity to deregister upon a showing of rehabilitation."  *Id.* at ¶¶ 44, 58, 64, 74.

¶ 23    The supreme court noted that the distinction between adult and juvenile offenders is based on "juveniles' increased susceptibility to outside pressure, immature behavior, and impulsiveness . . . [; thus] the transgressions of minors are viewed

as less blameworthy than those of adults." *Id.* at ¶ 29. The court also noted that juveniles are less susceptible to "[d]eterrence-based justifications for punishment," they are "more amenable to reform than adult offenders," and "the very fact of an offender's youth means that lifelong punishments are harsher in practice for juveniles than for adults." *Id.* at ¶¶ 30-32. Looking to these distinctions, the supreme court held that "CSORA violates the Eighth Amendment in imposing mandatory lifetime sex offender registration for offenders with multiple juvenile adjudications." *Id.* at ¶¶ 43, 47-58.

¶ 24  The supreme court explicitly "decline[d] to opine on the constitutionality of mandatory lifetime sex offender registration for an offender who was adjudicated delinquent for a sex offense as a juvenile and was subsequently convicted of one or more sex offenses as an adult." *Id.* at ¶ 43 n.14. However, that is the exact situation before us today. Unlike in *T.B.*, which involved a lifetime registration requirement for multiple juvenile adjudications and no adult convictions, Chronis was adjudicated as a juvenile *and* convicted as an adult for unlawful sexual behavior offenses.

12

¶ 25    We conclude that a lifetime registration requirement under CSORA, § 16-22-113(3), because of a prior juvenile conviction *in addition* to an adult conviction does not constitute a punishment for purposes of the Eighth Amendment; therefore, its retroactive application does not implicate the Ex Post Facto Clause.[1]  *See T.B.*, ¶ 35; *Smith*, 538 U.S. at 105-06.

¶ 26    Unlike an offender whose record only includes multiple juvenile offenses, an offender with a juvenile adjudication and an adult conviction does not implicate the heightened concerns associated with lifetime registration for juvenile offenders for purposes of the Eighth Amendment.  Adults are not as "susceptibl[e] to outside pressure, immature behavior, and impulsiveness" and can better weigh the risks of deterrence-based justifications for punishment; lifetime punishments are less harsh for adult offenders in practice; and, most importantly, such adult offenders have demonstrated their lack of reform after their juvenile

---

[1] This conclusion also adheres to the legislature's clear intent to prohibit deregistration where an offender has an adult conviction and one or more juvenile adjudications for unlawful sexual behavior, as evidenced by the plain language of section 16-22-113(3)(c), C.R.S. 2024.

offenses by committing a subsequent offense as adults. *See T.B.*, ¶¶ 29-32, 55.

¶ 27     An example of this distinction can be seen in the supreme court's reasoning in *T.B.* that lifetime CSORA registration for solely juvenile offenses was unconstitutional, in part, because such a "registration requirement appears to be retributive in nature, punishing a juvenile for his past conduct without regard to the threat — or lack thereof — that the juvenile currently poses." *Id.* at ¶ 53. While this is true for juveniles who do not reoffend as adults, a registration requirement for an individual who commits a later offense as an adult accounts for their current risk to society in light of a new offense. And while "mandatory lifetime sex offender registration for juveniles does not bear a rational connection to, and is excessive in relation to, CSORA's nonpunitive purposes of protecting the community and aiding law enforcement," the same cannot be said for offenders who later commit offenses as adults. *Id.* at ¶ 55.

¶ 28     Therefore, lifetime registration under CSORA is not considered a punishment for purposes of the Eighth Amendment or the Ex Post Facto Clause for offenders with a juvenile adjudication in addition

to an adult conviction. And, for the same reason, the court's consideration of an expunged juvenile adjudication for purposes of a deregistration petition does not implicate the Ex Post Facto Clause. But, as we explain below, the statutory expungement regime in effect at the time of the expungement controls.

### D. The Expungement Statutes and CSORA

¶ 29 We next consider Chronis' argument that, because his 1991 adjudication was expunged in 1995, section 16-22-113(3)(c) does not render him ineligible for deregistration.

¶ 30 "[W]hen a record is expunged, it is essentially erased and treated as if it never existed. Thus, in general, after expungement, only 'basic identification information' contained in the expunged record remains available to law enforcement agencies." *People v. Connors*, 230 P.3d 1265, 1269 (Colo. App. 2010) (citations omitted); *see also* Black's Law Dictionary 725 (12th ed. 2024) (One definition of "expunge" is "[t]o remove from a record, list, or book; to erase or destroy."). The parties contest which expungement statute applies: the prosecution argues the request to deregister was made in 2022 and is therefore governed by the statute in effect then, but Chronis

15

notes that the record was expunged in 1995 and therefore asserts that the 1995 statute applies. We examine both statutory regimes.

## 1. Expungement in 1995

¶ 31 The 1995 juvenile expungement statute differs from the 2022 statute, which only applies prospectively. *See People v. Pennington*, 2021 COA 9, ¶ 9 ("Statutes are generally presumed to operate prospectively."); *McCreadie*, 938 P.2d at 530 n.4.

¶ 32 Section 19-2-902(1), C.R.S. 1995, effective when Chronis' record was expunged, provided that "'expungement' means the designation of records whereby such records are deemed never to have existed. Upon the entry of an expungement order, the person, agency, and court may properly indicate that no record exists." Expungement was effectuated by "physically sealing or conspicuously indicating" on the physical or computer record that it was expunged. *Id.* at (2)(b). "Basic identification information on the juvenile" was still accessible by a "district attorney, local law enforcement agency, and the department of human services." *Id.* at (3). Section 19-2-902(4) allowed courts to order the inspection of the expunged record "after a hearing and good cause shown,"

provided that interested parties were given at least five days' notice of the hearing.

### 2. Current Juvenile Record Expungement

¶ 33 Section 19-1-306, C.R.S. 2024, details how expungement of juvenile records is now handled.[2] It specifies that "[u]pon the entry of an expungement order, the person who is the subject of the record that has been expunged may assert that he or she has no juvenile delinquency record." § 19-1-306(1)(a). Expungement is defined as "the designation of juvenile delinquency records whereby such records are deemed never to have existed." § 19-1-103(63), C.R.S. 2024; *see also* § 19-1-306(1)(a). Unless a statutory exception applies, expunged records are not available for inspection by others. *See* § 19-1-306(1)(b).

¶ 34 Section 19-1-306(3) contains the exceptions making expunged records available to others. Section 19-1-306(3)(b) provides that "any record that is ordered expunged is available to any judge and the probation department for use in any future proceeding in which the person whose record was expunged is charged with an offense

---

[2] The relevant provisions of the current statute and the one in effect in 2022 and 2023 (when Chronis moved to deregister) are the same.

as either a juvenile or as an adult." Chronis does not dispute that this exception would apply here.

E.     Expungement's Legal Effect for Deregistration

¶ 35    We conclude that the statute governing whether the court could have accessed Chronis' expunged juvenile adjudication is the 1995 statute in effect at the time of his expungement. Nothing in the current juvenile expungement statute evidences a clear legislative intent to apply retroactively, nor can we say that expungement is a purely procedural matter given that it lawfully allows an individual to represent that they have no juvenile record. *See McCreadie*, 938 P.2d at 530 n.4; § 19-1-306(1)(a). And while it does not violate the Ex Post Facto Clause to apply CSORA's registration scheme retroactively — including when considering expunged adjudications as explained above — whether an expunged conviction can be considered depends on the expungement statute in effect when the records were expunged.

¶ 36    We still reject Chronis' main contention, however, that expunged records cannot be considered at all because they have been effectively erased. An expunged conviction — despite being "essentially erased and treated as if it never existed" — is still a

conviction that may be considered in a deregistration proceeding or other matter *if* the expungement statute permits its consideration. *Connors*, 230 P.3d at 1269; *see also* § 19-1-306(3)(b); § 19-2-902(4), C.R.S. 1995.

¶ 37    *McCulley* is instructive on this point.  The supreme court determined that a completed deferred judgment did not count when deciding if a defendant "has" one or more convictions because, once a deferred judgment is completed, they no longer have a conviction. *McCulley*, ¶ 30.  This is similar to how vacated or illegal convictions are treated, which become null and void.  *See, e.g., United States v. Jackson*, 132 F.4th 266, 276 (3d Cir. 2025) ("When a sentence is vacated, the defendant is rendered unsentenced."); *United States v. Merrell*, 37 F.4th 571, 576 (9th Cir. 2022) ("We start from the settled principle that the vacatur of appellants' original sentences legally 'wiped the slate clean.'" (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011))); *see also People v. Rollins*, 771 P.2d 32, 34 (Colo. App. 1989) ("When an original sentence is illegal, [it is] therefore void . . . .").

¶ 38    Expungement allows an individual to assert that they have no criminal record associated with the criminal conviction or

adjudication, but both the 1995 and the current juvenile expungement statutes permit courts to review and consider expunged records in certain circumstances. *See* § 19-2-902(1), (4), C.R.S. 1995; § 19-1-306(1)(a), (3)(b). In effect, individuals with an expunged adjudication under the current statutory regime have every right to treat it as if it does not exist — but they still have an adjudication that, in the proper circumstances, may be reviewed.[3] *See McCulley*, ¶ 29.

¶ 39    In Chronis' case, section 19-2-902(4), C.R.S. 1995, provided that his expunged adjudication could "only be inspected by order of the court, after a hearing and good cause shown," provided the interested parties received at least five days' notice before the hearing. The plain language of this provision indicates that a court could have inspected Chronis' expunged record if it held a properly noticed hearing and found good cause to do so. *See Patton*, ¶ 9; *see*

---

[3] This conclusion is also supported by the legislature's clear understanding of how expungement should be treated under the current regime, as evidenced by the exception in section 19-1-306(3)(b), C.R.S. 2024, allowing courts to review expunged adjudications for purposes of "future proceeding[s] in which the person whose record was expunged is charged with an offense as either a juvenile or as an adult."

*also McCoy*, ¶ 37. But, based on the record before us, we cannot say with certainty that this occurred.

¶ 40   The probation supervisor sent the amended report notifying the court of Chronis' juvenile adjudication on August 3, 2022, and the court held a hearing on November 1, 2022. During the hearing, at the request of the prosecution, the court explicitly ordered that the prosecution was permitted to access the expunged record "for the limited purposes of dealing with the defendant's motion to deregister." So, on one hand, it seems that the parties had some notice of the hearing more than five days in advance and the court implicitly found that good cause existed to inspect the expunged record.

¶ 41   But, on the other hand, while the court seemed to know at the outset that it was dealing with an expunged record, it is unclear whether all parties were aware that accessing the expunged record could be a focus of the hearing. And after the prosecution recommended rejecting Chronis' petition for deregistration, the court did not hold another hearing on the matter, nor did it invite Chronis to respond to the prosecution's recommendation. And after Chronis' second July 2023 petition, the court did not hold another

21

hearing.  Instead, it simply denied the petition on the grounds that Chronis was ineligible, presumably reasoning, as it did at the November hearing, that because the prior adjudication (though expunged) involved unlawful sexual behavior, Chronis would not be eligible for deregistration.

¶ 42    As a result, we conclude that expunged adjudications may be considered when determining whether to grant or deny a petition for deregistration under CSORA where the applicable expungement statute allows it.  But in this case, a remand is appropriate for the district court to determine in a properly noticed hearing whether good cause exists to inspect Chronis' expunged record in accordance with the 1995 statute.  After the hearing, if the district court determines there is good cause to inspect the record, it may consider the adjudication, regardless of its expungement, when determining whether to grant or deny Chronis' petition.

### F.    The Rule of Lenity

¶ 43    Finally, we reject Chronis' argument that the rule of lenity applies here.  We have found no ambiguity in the expungement statutes or CSORA, so the rule of lenity is not implicated.  *See People v. Thoro Prods. Co.*, 70 P.3d 1188, 1198 (Colo. 2003) ("The

rule of lenity should not be applied to defeat the evident intent of the General Assembly.").

IV.    Disposition

¶ 44    We reverse and remand the case for the district court to hold a hearing to determine whether good cause exists to inspect Chronis' expunged adjudication. Depending on its findings, it may then rely on the expunged adjudication to determine whether Chronis is eligible for deregistration.

JUDGE HARRIS and JUDGE SCHUTZ concur.